# McCARTHY v. STATE.

No. A-11117.   May 10, 1950.

(218 P. 2d 397.)

Irvine E. Ungerman, Tulsa, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

BRETT, J. Harry McCarthy, defendant below, was charged in the district court of Tulsa county, Okla., with the offense of unlawful possession of intoxicating liquor, second offense, on August 27, 1947. He waived a jury, was tried by the court, convicted and sentenced to 90 days imprisonment and to pay a fine of $250.

This prosecution was predicated upon evidence obtained under and by virtue of a search warrant executed upon the home and premises of the defendant, and as a result of which the officers discovered 16 four-fifths gallons of tax-paid rum. When the case came on for trial on February 19, 1948, the defendant interposed and urged a motion to suppress the evidence. As grounds therefor he attacked the validity of the search warrant under which the search was made and the evidence obtained. In support of the motion to suppress, the defendant offered evidence to show that the search warrant was inadequate in not describing the premises with that particularity required by law, and urged that it was what it termed in the law a "blanket search warrant". The pertinent part of the search warrant reads as follows, to wit:

"That said intoxicating liquors are being disposed of and kept by one John Doe, whose real name is unknown to informant, and Harry McCarthy, in the manner aforesaid, on the following described premises, situated in Tulsa county, Okla., within said county and state, to wit: A brick house, approximately 7 rooms, and a 1 story brick and frame building used as a garage and servants quarters, located on a tract of land described as follows: Be-

ginning 685 ft. S. and 25 ft. E. of N.W. corner of N.E. North East, thence S. 305 ft., East 470 ft., North 305 ft., West 470 ft. to point of beginning and beginning 990 ft. S. and 25 ft. E. of N.W. corner of N.E. N.E. thence S. 275 ft. East 470 ft. N. 275 ft. W. 47 ft. to point of beginning, containing 6.28 acres more or less in Sec. 12-19N-13E, Tulsa County, Oklahoma, * * *"

It will not be necessary to review all of the evidence offered by the defendant. It is sufficient to note that it established that the search warrant was served on Harry McCarthy at the place of the search when the raid was made. It further appears that the premises searched, according to the evidence of the defendant's wife, Mrs. McCarthy, was a brick house which the evidence shows to have been from 4 to 6 rooms in size and a brick and frame garage wherein the tax-paid rum was found. The evidence in support of the motion to suppress further disclosed that on the premises as described in the warrant there was another 4-room frame house occupied by the Robert Newtons. This evidence formed the basis for the contention that the warrant was a blanket warrant, and therefore invalid. The evidence in this regard, however, shows that the frame structure occupied by the Newtons was not searched. The return on the warrant offered in evidence was that Harry McCarthy, though not named in the warrant as the owner and occupant, was actually the owner and in control of the occupancy of the premises at the time the raid was conducted. Under the issues herein raised by the defendant, he contends the search and seizure must stand or fall on the sufficiency of the description contained in the search warrant itself, or that in the said warrant the premises must be sufficiently described so as to enable the officers to locate, as he aptly puts it, a single and particular premises. He contends that it was not

even a sufficient description to afford a place of beginning, much less to enable an officer to locate the place or premises particularly described. Moreover, he further contends that the warrant was so indefinite and uncertain as to involve the other frame house situated on the property described and inhabited by others not herein involved, and thereby constituted a blanket search warrant and was therefore invalid. Stated differently, the defendant contends that the foregoing description is so inadequate that a lay officer to whom it is directed may not without the aid of any other information or inquiry, having no personal knowledge of any kind whatsoever as to the premises to be searched, locate them from the description contained in the warrant.

To support the foregoing contentions he offered proof by the county surveyor to show that he could not locate the property from the warrant because, he said, there was no point of beginning and no section lines. With this conclusion the court is certainly not in accord. One cannot read the surveyor's testimony without being thoroughly convinced that he was a willing witness for the defendant. His testimony is of little value because of its absurdity. A simple analysis of the warrant reveals the untenable nature of the defendant's contention. In the first place, such matters are not to be construed by misinterpretation as to result in utterly illogical absurdities, nor is an officer required to act in such matters without the aid of some other information or inquiry. Because of the validity of the last assertion, sheriffs are equipped with maps, plats, etc., to enable them expeditiously to locate such premises as may be the object of their search, and for other purposes. Nor is the officer required to have no personal knowledge in such matters, or close his eyes to his common understanding.

Here the sheriff knew where McCarthy's home was. We know of no case holding that unless the officer used the search warrant to locate the premises searched the failure so to do would invalidate the search. The officer's independent knowledge with reference to the location of the place to be searched would make no difference provided the property actually searched corresponded with that described in the warrant. The property in question was rural property located outside of the limits of the city of Tulsa. This being rural property the sheriff looking at the search warrant would first look to see if the property was located in Tulsa county. The warrant so showing he would then look for the section, township and range to determine its further location. In the search warrant it appears that the section involved is Section 12, and to locate Section 12 he must ascertain in what township and range Section 12 is particularly located. If he did not know of his own knowledge the law permits him to refer to his maps and definitely determine the township and range. To hold otherwise is to reduce the law to an impractical and illogical absurdity. The description identifies the township as 19 N. and the range as 13 E. Such description is not inadequate, because of the omission of the letter T or the word township and the failure to spell out the abbreviation N with the word north. Nor is it inadequate because the letter R indicating the range is omitted or that the word "range" is entirely omitted. This omission of the letters T and R for the words township and range in such description is not fatal since common knowledge of persons versed in such matters as are sheriffs tells him that the reference 19 N and 13 E are to township 19 North and range 13 East. This being true, as it certainly is, thus this part of the foregoing description is valid for by reference to the face of the warrant

the officer could ascertain the township and range of which the section of land involved is a part. Descriptions by section, township and range have been upheld. Crim v. State, 68 Okla. Cr. 390, 99 P. 2d 185. The evidence shows that the section thus described was the section containing the property herein involved, but the defendant contends even then it is not possible to locate the premises from the further description of the warrant. Can it be that "N.E." "Northeast" is indefinite and inadequate for the reason the same does not contain the further description of ¼ following the "N.E. of Northeast"? Based upon the common understanding of persons handling such documents there would be no misunderstanding as to what was meant by the description contained in the search warrant, in spite of the technical failure to insert the fractional one-fourth. Again, here the officer may rely on common knowledge and understanding in interpreting abbreviations. The law, while jealously guarding constitutional protections, is practical. It does not require an officer to erect metaphysical obstructions to the performance of his duty. But the defendant contends that there is no place or point of beginning for further identification. This contention is wholly without merit. It clearly appears further in the description that the point of beginning is 685 feet south and 25 feet east of the northwest corner of the northeast quarter of the northeast quarter (the point of beginning), thence south 305 feet, east 470 feet, north 305 feet and east 470 feet to point of beginning, thus describing the northernmost tract of the premises involved. On this tract the buildings searched were located. Further, the description describes another tract reading as follows: "* * * and beginning 990 ft. S. and 25 ft. E. of N.W. corner of N.E. N.E. thence S. 275 ft., East 470 ft. N. 275 ft., W. 47 ft. to point of beginning, containing 6.38

acres more or less in sec. 12-19-N-13E, Tulsa County, Oklahoma." Thus describing the south tract herein al-legedly involved. Defendant contends that this tract cannot be closed up because of the description 47 feet, on the North side, and thus that description contained in the warrant renders the entire instrument invalid. If it were true this tract could not be closed up on the north side, it would not invalidate the description in relation to the search herein conducted for the reason that the brick house and brick and frame garage search are both on the north half of the premises, entirely correctly described, and within the first tract hereinbefore described. To one other than a person desiring to be confused, it is apparent that the figure 47 is a typographical error intended for 470 feet instead of 47 feet which would be entirely adequate to close the tract on the north side. Moreover from the description that preceded the number 47 as to the southerly tract, as well as that contained in the face of the warrant as to the northerly tract, it is conclusive that 470 was intended, since both of the tracts were of equal length, and no other conclusion can be arrived at upon a fair and just consideration of the de-

Sec. 12—19N—13E

scription therein contained. A comparable description in a deed was held to be good in McLendon v. Ravesies, 178 Miss. 428, 173 So. 303. The preceding plat or drawing conclusively illustrates the clarity of the said description.

This court has repeatedly held that the description must be sufficiently definite and certain as to leave the officer no discretion as to what property he shall search. Shipman v. State, 52 Okla. Cr. 373, 5 P. 2d 397; Shanks v. State, 59 Okla. Cr. 211, 56 P. 2d 1199; Linderman v. State, 43 Okla. Cr. 166, 277 P. 602; Preston v. State, 42 Okla. Cr. 372, 276 P. 784, reversing 40 Okla. Cr. 403, 269 P. 507; Smith v. State, 40 Okla. Cr. 366, 269 P. 376; Cook v. State, 40 Okla. Cr. 219, 267 P. 1045; Wofford v. State, 40 Okla. Cr. 18, 266 P. 494; Shanafelt v. State, 38 Okla. Cr. 345, 261 P. 380; Adcox v. State, 54 Okla. Cr. 23, 13 P. 2d 593; Caldwell v. State, 52 Okla. Cr. 286, 5 P. 2d 182; Powell v. State, 65 Okla. Cr. 221, 84 P. 2d 442; Linthicum v. State, 66 Okla. Cr. 327, 92 P. 2d 381; Weisband v. State, 69 Okla. Cr. 79, 100 P. 2d 297; Stouse v. State, 62 Okla. Cr. 46, 70 P. 2d 145; Peters v. State, 71 Okla. Cr. 175, 110 P. 2d 300; Pitzer v. State, 69 Okla. Cr. 363, 103 P. 2d 109. But if the officers executing the search warrant can locate the premises to be searched without the aid of any other information the warrant is sufficient. Mitchell v. State, 43 Okla. Cr. 63, 277 P. 760. Barring of course the use of maps to secure general directions and location. In Pickens v. State, 71 Okla. Cr. 167, 110 P. 2d 319, this court said:

"The description of the premises to be searched is sufficient, if it enables the officers executing the search warrant to locate the premises to be searched without the aid of any other information save that contained in the search warrant."

The description exclusive of general directions, which must in every such case be obtained by the officer from sources outside the warrant, met the requirements prescribed in Pickens v. State, supra.

But the defendant further contends that there was more than one inhabited house on the premises described and thus the warrant was blanket in its scope and therefore invalid. Such is not the case because the search was particularly limited in the search warrant to the brick house and the one story brick and frame building of approximately 7 rooms and the brick and frame garage. It was not broad enough to be inclusive of the 4-room frame house. The particular description of the brick house and brick and frame garage, under the conditions, was as definite and certain as would have been a correct house number in an urban settlement. The 4-room frame house was not searched. The premises to be searched thus being limited in the warrant, there being no other brick house and brick and frame garage on the premises, there would be no confusion as to what the search was intended to cover. The search being thus confined and thus executed did not constitute a blanket search warrant. The cases cited by the defendant in this connection are distinguishable and clearly not in point. The search herein involved in no sense was an exploratory search. We are convinced that the description contained in the warrant was sufficiently accurate, that it meets the requirements of the law, and from it, the property could be specifically located. It was undoubtedly upon the same or similar line of logic that the trial court overruled the defendant's motion to suppress the evidence. If the search warrant had not particularly described the dwelling as of brick construction and the garage as a frame and brick garage, the warrant would have fallen

in that classification of a blanket warrant, since there would have been no means of distinguishing the place to be searched, and would therefore have been void. But the particularity of the description relative to the house and garage to be searched removed it from such classification and gave it that definiteness and certainty required by law. This contention is therefore without merit.

The defendant waived a jury and stipulated that the foregoing and other facts adduced at the hearing on the motion to suppress might be considered by the court, as the facts for determination of the issue as charged in the information. Upon this basis the case was submitted to the trial court without a jury for judgment. The trial court found the evidence sufficient to sustain the conviction and accordingly pronounced judgment and sentence. In this connection we have repeatedly said as in Crim v. State, supra [68 Okla. Cr. 390, 99 P. 2d 186]:

"Where a jury is waived and a case tried to the court, his findings as to the guilt of the defendant will not be reversed where there is any competent evidence in the record, together with the reasonable inferences and deductions to be drawn therefrom, supporting the court's finding."

There being sufficient evidence to support the judgment and sentence of the trial court, the same is accordingly affirmed.

JONES, P. J., and POWELL, J., concur.